FILED
SUPERIOR COURT
OF GUAM

2024 APR -5 PM 4: 33

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

      vs.

NAKITA T. AGUON,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. CM0145-21

**DECISION AND ORDER DENYING MOTION FOR DISQUALIFICATION OF PROSECUTOR**

  **THIS MATTER**[1] came before the Court for a Motion Hearing on Nakita T. Aguon's ("Defendant") Motion for Disqualification of the Prosecutor and Supplemental Motion for Disqualification of Prosecutor on March 1 and March 21, 2024. Assistant Attorney General Grant Olan ("AAG Olan") appeared on behalf of the People of Guam ("the People"). Attorney David Lujan ("Attorney Lujan") appeared on behalf of the Defendant. After the hearing, the Court took the matter under advisement and now issues the following Decision and Order.

## BACKGROUND

**A. Procedural History**

  This case began on May 25, 2021, and it was assigned to the Hon. Judge Alberto E. Tolentino ("Judge Tolentino"). Jury trial began on November 16, 2022, but it was paused from late 2022

---

[1] The undersigned judge extends the utmost respect to Judge Tolentino, his wife, and their children. Nothing in this Order is intended to imply or call into question the good reputation of Judge Tolentino, Mrs. Tolentino, or their children. The appearance of conflict of interest arises simply because of the close degree of familial relationship.

through summer 2023 due to juror and judge unavailability. Trial resumed and continued through the summer and fall of 2023. At this time, the People have presented their case-in-chief and rested. Defendant has not begun her case-in-chief.

The People rested on September 27, 2023. Min. Entry at 10:13:51 AM (Sept. 27, 2023). Several months later, on January 18, 2024, Judge Tolentino announced his disqualification from the case. Form One – Disqualification (Jan. 18, 2024). Judge Tolentino cited a family relationship between his mother-in-law and Attorney Lujan,[2] an adversarial relationship between Attorney Lujan and Judge Tolentino's brother-in-law, and apparent "animus" from Attorney Lujan towards Judge Tolentino as factors contributing to an "appearance of bias." *See generally id.* On the same day, Judge Tolentino issued a Decision and Order (Jan. 18, 2024) denying Defendant's Motion for Disqualification of Prosecutor (Sept. 5, 2023). Judge Tolentino did not decide two other pending motions—a Motion for Judgment of Acquittal (Oct. 2, 2023) and a Motion for Grant of Use Immunity to Defense Witness Patrick Indalecio (Dec. 13, 2023)—prior to his disqualification.

Because all other Judges of the Superior Court of Guam have also disqualified from this case, the undersigned was appointed as judge *pro tempore*. Notice of Judge Assignment (Jan. 30, 2024). The Court briefly met with the parties on February 9, 2024, to discuss the status of the case. *See* Min. Entry (Feb. 9, 2024). At that time, Defendant's counsel[3] noted the pending motions and also indicated that Defendant may seek to set aside Judge Tolentino's Decision and Order and re-raise the issue of prosecutorial disqualification. *See id.* at 10:14:46 AM.

---

[2] From this relationship, Judge Tolentino and Attorney Lujan have at least eight degrees of familial relationship. See Appendix A – Table of Consanguinity. Title 7 GCA § 6105(b)(5), which requires disqualification in certain cases involving family members, applies only to relationships within three or fewer degrees.

[3] At this hearing, Defendant was represented by Attorney Delia Wolff, appearing in place of Attorney Lujan.

**B. Initial Motion for Disqualification of Prosecutor (September 2023)**

Since September 2023, Defendant has maintained that AAG Olan must be disqualified from this case for making certain statements to his investigator on August 15, 2023.[4] On September 5, 2023, Defendant filed a Motion for Disqualification of Prosecutor. The next day, Judge Tolentino orally denied the Motion, finding that AAG Olan's comments did not violate Guam Rule of Professional Conduct ("GRPC") 4.2, which governs communications between a lawyer and a person represented by counsel. *See* Min. Entry at 1:11:32 PM (Jury Trial, Sept. 6, 2023). However, it appears the Defendant sought, and Judge Tolentino granted, leave to file a reply brief.

On October 2, 2023, Defendant filed a Reply in Further Support of Motion for Disqualification of Prosecutor. Defendant argued the Court erred by only analyzing the issue of disqualification under GRPC 4.2. *See id.* at 2-3. Defendant argued the Court also should have analyzed under GRCP 8.4(d), which governs "conduct that is prejudicial to the administration of justice." *Id.* at 3-4. Defendant additionally argued the Court should have analyzed for "vindictive personal bias," and should have done so under an "appearance of bias" standard. *Id.* at 3.

On January 18, 2024, shortly before he disqualified himself from this case,[5] Judge Tolentino issued a written Decision and Order denying the Motion for Disqualification of the Prosecutor. Judge Tolentino found that the statements in question were not made to Defendant; instead, they were made by AAG Olan to his investigator, and they were inadvertently overheard by Defendant. Dec. & Order at 3 (Jan. 18, 2024). Judge Tolentino held that although AAG Olan should have spoken to

---

[4] The alleged statements include: "What is wrong with [Attorney Lujan]?"; "[Attorney Lujan] is getting old;" "I don't care if this case takes five years, I will be here for five years;" and "I don't care what kind of tricks [Attorney Lujan] has up his sleeve, I'm not going to let this go." Mot. Disqualification at 2 (Sept. 5, 2023).

[5] Per the filing stamps on each document, Judge Tolentino filed his Decision and Order at 1:46 PM on January 18, 2024, and then filed his Form One – Disqualification at 3:53 PM on the same day.

the investigator more discreetly, his statements did not rise to a violation of either GRCP 4.2 or GRCP 8.4(d). *See id.* at 3-4. Judge Tolentino also found "no merit" in Defendant's legal assertion that the claim of personal bias should be analyzed under the "appearance of bias" standard. *Id.* at 4.

**C. Motion to Withdraw Decision and Order (February 2024)**

After the first hearing before this Court, Defendant filed a Motion to Withdraw Decision and Order Denying Motion for Disqualification of Prosecutor (Feb. 15, 2024). Defendant argues that the Decision and Order should be withdrawn because, in her view, Judge Tolentino had already *de facto* disqualified himself from this case on January 17, 2024, one day before he issued the Decision and Order in this case. Defendant notes that on that day, Judge Tolentino disqualified himself from another case handled by Attorney Lujan, *People of Guam v. Nicholas Wayne Moore*, Criminal Case No. CF0313-21 ("*Moore* case"). In disqualifying from the *Moore* case, Judge Tolentino stated that he consented "to his disqualification from all cases handled by the Lujan firm." Mot. Withdraw, Ex. 2 (Answer to Statement of Objection, Criminal Case No. CF0313-21, Jan. 17, 2024). Defendant reasons that Judge Tolentino's disqualification in the *Moore* case extends to all other cases involving Attorney Lujan, including this one. *Id.* at 4-5. Thus, Defendant concludes that Judge Tolentino was without jurisdiction to issue the Decision and Order in this case since he was already disqualified when he issued it. *See id.* On February 16, 2024, the Court heard the Motion to Withdraw. The People indicated they had no objection to the Motion. Min. Entry at 10:58:17 AM (Feb. 16, 2024). Since the motion was unopposed, the Court granted the Motion. *Id.* at 11:20:10 AM.

**D. Further Proceedings on Motion to Withdraw the Prosecutor**

On March 1, 2024, the Court heard new arguments on the Motion to Withdraw the Prosecutor. There, in addition to the issue of AAG Olan's alleged statements, Defendant asserted there had been an undisclosed familial relationship between Judge Tolentino and Douglas Moylan,

undisputed that Judge Tolentino has a significant and continuing relationship with his stepchildren. It is also reasonable to infer that Judge Tolentino's wife and Attorney General Moylan likely have continuing interactions in order to co-parent their children. Under these circumstances, a reasonable person could question whether Judge Tolentino could be impartial in a case proceeding at the direction of Attorney General Moylan. Again, the Court does not suggest that Judge Tolentino actually *was not* impartial—only that a reasonable person might find the situation troubling.

At minimum, it would have been prudent for Judge Tolentino to disclose these relationships to the parties. Judge Tolentino may have believed that the relationship between himself and Attorney General Moylan—which is not based on consanguinity, or on an existing marriage—was too attenuated to merit his disqualification. However, Guam judges should "err on the side of the caution" with respect to disqualification. *Dizon*, 1998 Guam 3 ¶ 9; *see also* ABA 1990 Model Code of Judicial Conduct Canon 3E(1), Commentary ("A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification."). Full disclosure would have been appropriate here because it would have allowed the parties to register an objection, if any. Moreover, transparency could have mitigated an appearance of impropriety. *See* 7 GCA § 6105(a) ("if, following complete disclosure to all parties in the proceeding of the reasons for disqualification, all parties agree to having the Judge continue to sit in the proceedings, he or she need not disqualify himself or herself"); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 866 (1988) (full disclosure "would have completely removed any basis for questioning the judge's impartiality and would have made it possible for a different judge to decide whether the interests—and appearance—of justice would have been served by a retrial."). Conversely, the nondisclosure of these facts strengthens the appearance of impropriety. *Cf. Burlington Northern R.*

*Co. v. TUCO Inc.*, 960 S.W.2d 629, 636 (Tex. 1997) (in arbitrator context, partiality can be "established from the *nondisclosure itself*, regardless of whether the nondisclosed information necessarily establishes partiality or bias." (emphasis in original)). Even assuming—as the Court emphatically does—that Judge Tolentino's motivations for not disclosing were wholly pure of heart and incorruptible, a reasonable person might think otherwise. This merits Judge Tolentino's disqualification under 7 GCA § 6105(a).

**2. The Relationship Between Judge Tolentino and Attorney General Moylan Does Not Compel Disqualification of AAG Olan or the whole Office of the Attorney General**

Having confirmed that Judge Tolentino should have been disqualified, the Court now confronts Defendant's primary argument. Defendant argues that disqualification of the whole Office of the Attorney General is appropriate because AAG Olan failed to disclose the relationship between Judge Tolentino and Attorney General Moylan. Supp. Mot. for Disqualification at 2, 6. The Court is not convinced that this is an appropriate remedy.

First, there is no evidence before the Court that AAG Olan had, or had reason to have, any knowledge of the familial relationship between Judge Tolentino and Attorney General Moylan. Moreover, even if AAG Olan did know about the relationship, it is unclear whether he would have any legal duty to disclose those facts. It is clear that *Judge Tolentino* had a duty to disclose his own disqualification. *See* 7 GCA § 6106 (when a judge knows of disqualifying facts, "it shall be his or her duty to declare the same in open court and cause a memorandum thereof to be entered in the minutes."); *see also In re Kensington Intern. Ltd.*, 368 F.3d 289 (3d Cir. 2004) ("if there is to be a burden of disclosure, that burden is to be placed on the judge to disclose possible grounds for disqualification."). But Defendant has not provided—nor has the Court independently found—any Guam statute or GRPC provision, nor any case law from other jurisdictions, providing that a

*party* has an equivalent legal or ethical duty to disclose a *judge's* disqualification. The Court is not inclined to create such a rule here. *Cf. L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 378 (Minn. 1989) ("courts have been extremely reluctant to impose a duty upon attorneys to their client's adversary.").

Second, the standard for attorney disqualification is "whether an attorney's continued representation of a party or participation in an action violates or significantly risks violating the Guam Rules of Professional Conduct." *Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶ 20. Thus, neither AAG Olan specifically, nor the Office of the Attorney General as a whole, should be disqualified based on the familial relationship absent evidence that this relationship will lead to an actual or likely GRPC violation. Again, however, Defendant has not cited any GRPC provisions which might apply to this issue, nor is any apparent to the Court.[9]

Third, because he has already been disqualified, Judge Tolentino is no longer part of this case. To the extent that Defendant believes that Judge Tolentino may have been biased in his prior decisions, the Court has shown its willingness to reconsider those decisions where appropriate. Thus, any appearance of impropriety has been purged. And while Defendant may argue that disqualification of the Office of the Attorney General is nonetheless warranted as a punishment, attorney disqualification is generally not appropriate on that basis. *See, e.g., In re Estate of Myers*, 130 P.3d 1023, 1026 (Colo. 2006) (en banc) (trial court's disqualification power is to protect integrity of proceedings, "not to discipline or punish" attorneys); *City of San Diego v. Superior*

---

[9] Defendant's Supplemental Motion argues that claims of "vindictive personal bias" are not analyzed under the *Barrett-Anderson* standard, but rather under an "appearance of bias" standard. Defendant has advanced this argument throughout her efforts to disqualify AAG Olan. *See* Supp. Mot. Disqualification at 3 (Mar 8, 2024); Reply Mot. Disqualification at 3 (Oct. 2, 2023); Mot. Disqualification at 2-3 (Sept. 5, 2023). As explained in the next section, the Court disagrees with that conclusion. But even if it were true, this portion of Defendant's argument regarding the familial relationship does not appear to implicate "vindictive personal bias" in any way, so the appearance of bias standard does not apply here regardless.

*Court*, 30 Cal. App. 5th 457, 470 (Ct. App. 2018) ("We do not disqualify a lawyer from representing a client to punish the lawyer's mistakes or even bad behavior. The discipline of lawyers in California is a function reserved to the State Bar."); *see also People v. Tuncap*, 1998 Guam 13 ¶ 23 (courts should generally "apply sanctions which affect the evidence at trial and the merits of the case as little as possible.").

The Court therefore concludes that the undisclosed relationship between Judge Tolentino and Attorney General Moylan, while meriting the disqualification of Judge Tolentino, does not require the disqualification of AAG Olan and/or the entire Office of the Attorney General.

**3. The People of Guam are Not Disqualified from Prosecuting This Case**

Defendant also asks the Court to reopen the question of whether AAG Olan must be disqualified for his alleged comments on August 15, 2023. Defendant argues these comments violate GRPC 4.2 and 8.4(d), and also demonstrate "vindictive personal bias" against Defendant and/or Attorney Lujan.

The Court finds that AAG Olan's commends do not amount to a violation of either GRPC provision. First, the Court agrees with and adopts Judge Tolentino's analysis under Rule 4.2. *See* Dec. & Order at 3-4 (Jan. 18, 2024). That rule provides: "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." GRPC 4.2. Here, Judge Tolentino found that AAG Olan's comments were made to the People's investigator, not to Defendant herself, and the Court has no basis to deviate from that finding. The Court was not present for this incident, nor was it captured in the trial transcripts. Under the circumstances, the Court finds it appropriate to defer to Judge Tolentino's finding of fact. Since

Judge Tolentino clearly found that AAG Olan did not communicate with Defendant, the Court concludes there was no violation of GRPC 4.2.

Second, the Court finds no violation of Rule 8.4(d). That rule provides that it is "professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." GRPC 8.4(d). Courts have held that state and federal equivalents to GRPC 8.4(d) apply to tactics by counsel intended to harass and intimidate others. *See Schneiter v. United States*, 159 Fed. Cl. 356, 376 (2022) (collecting cases); *see also Matter of Oberlander*, 2018 WL 9782713 * 21 (E.D.N.Y. Aug. 13, 2018) (respondent's "unrelenting pattern of flagrant and discourteous behavior . . . provides sufficient grounds under the circumstances to find a violation of Rule 8.4(d)."). However, the Court again defers to Judge Tolentino's finding that AAG Olan's comments were directed to his own investigator, not to Defendant. Such comments, while indiscreet, do not rise to the level of a GRPC 8.4(d) violation. *Cf. Alexander Interactive Inc. v. Adorama, Inc.*, 2014 WL 4058705 * 2 (S.D.N.Y. Aug. 14, 2014) ("manifest[ing] a dislike of opposing counsel" does not prejudice the administration of justice, whereas "hurl[ing] a personal invective" laced with profanity at counsel does so).

In any case, as noted above, the Guam standard for attorney disqualification is "whether an attorney's *continued* representation of a party or participation in an action *violates or significantly risks violating* the Guam Rules of Professional Conduct." *Barrett-Anderson*, 2018 Guam 20 ¶ 20 (emphasis added). Even if AAG Olan's actions *had* risen to the level of a violation previously, the question is whether his *continued* representation of the People of Guam *would* violate or risk a violation of the GRPC, not whether his prior representation did so. Attorney disqualification is meant to be a prophylactic remedy. *See, e.g., City of San Diego*, 30 Cal. App. 5th at 470-71; *State Compensation Insurance Fund v. Drobot*, 2014 WL 12579808 * 7 (C.D. Cal. Jul. 11, 2014) (similar). Here, Judge Tolentino's admonishment of AAG Olan's indiscretion appears sufficient to deter any

further inappropriate conduct, and indeed Defendant has not alleged any other inappropriate statements since that time. Accordingly, the Court will not disqualify AAG Olan for an alleged prior violation of these rules.

Defendant additionally argues that AAG Olan's statements merit disqualification because they present an appearance of "vindictive personal bias." At the outset, the Court finds that AAG Olan's statements simply do not rise to the level of proving that AAG Olan holds a "vindictive personal bias" towards either Defendant or Attorney Lujan. However, Defendant argues that under *People v. Tennessen*, 2009 Guam 3, the statements need only demonstrate an "appearance of bias" to warrant disqualification. In *Tennessen*, the Guam Supreme Court held that the "appearance of bias" standard governed attorney disqualification, and that a reasonable person might find that the then-Attorney General held a "vindictive bias" towards a particular defendant. *See id.* ¶ 31. However, *Tennessen* was largely overruled by *Barrett-Anderson*, which clarified that the "appearance of bias" standard *does not* govern attorney disqualification today. *See* 2018 Guam 20 ¶¶ 17-20. Defendant argues that *Barrett-Anderson* carved out a special exception to this new rule for claims of "vindictive personal bias." *See* Supp. Mot. Disqualification at 3 (citing *Barrett-Anderson*, 2018 Guam 20 ¶ 19). However, the Court does not read *Barrett-Anderson* to do so.

In *Barrett-Anderson*, the Supreme Court of Guam announced a new attorney disqualification standard based on the 2003 adoption of the Guam Rules of Professional Conduct. *See* 2018 Guam 20 ¶ 18. The Supreme Court reasoned that since the GRPC was based on the ABA Model Rules of Professional Conduct ("MRPC"), attorney disqualification under the GRPC should mirror attorney disqualification under the MRPC, i.e., the "violates or significantly risks violating the [GRPC]" standard. *See id.* ¶ 17. However, the Supreme Court also recognized that criminal cases opened *before* the adoption of the GRPC in 2003 should not necessarily be governed by the GRPC. Thus,

"[w]hen indictments pre-date the current rules, additional standards for disqualification of prosecutors may exist or be employed when a defendant's constitutional rights risk being violated." *Id.* ¶ 19. The *Tennessen* case fell under this category—the *Tennessen* defendant was indicted in 2002, prior to the adoption of the GRPC. *Id.* ¶ 18.

*Barrett-Anderson* then explained that since the *Tennessen* case predated the adoption of the GRPC, it was not inconsistent for the Supreme Court to have applied the pre-GRPC "appearance of bias" standard in that case. *See id.* ¶ 19. However, *Barrett-Anderson* makes clear that the "'appearance of impropriety' standard ceased to be the standard for attorney disqualification after the 2003 adoption of the Guam Rules of Professional Conduct *for criminal actions filed after the rules' effective date* and for all subsequent attorney conduct in pending civil cases." *Id.* ¶ 18 (emphasis added). And to the extent that *Tennessen* is inconsistent with *Barrett-Anderson*, the Supreme Court expressly overruled *Tennessen*. *Id.* ¶ 19.

The Court does not read *Barrett-Anderson* to leave open a specific exception for the "appearance of bias" standard to continue governing claims of "vindictive personal bias." Instead, *Barrett-Anderson* explains that the *Tennessen* case properly evaluated the claim that way—but it was proper because that case was indicted before the adoption of the GRPC. Had the *Tennessen* case been filed after 2003, then the "appearance of bias" standard would not have applied. Instead, the GRPC-based attorney disqualification rule—that is, the *Barrett-Anderson* rule—would have governed. This would have foreclosed application of the "appearance of bias" test even to the analysis of "vindictive personal bias."

Accordingly, the Court rejects Defendant's argument that a claim of "vindictive personal bias" should be evaluated for the *appearance* of bias. Instead, it must be evaluated under the same standard as all other attorney disqualification challenges: whether the alleged "vindictive personal

bias" actually, or significantly risks, violates a provision of the GRPC. And since the Court has found no evidence of actual vindictive bias on the part of AAG Olan, nor any violation or like violation risk that his future appearances, if any, would violate the GRPC, this claim is not a basis to disqualify AAG Olan either.

## CONCLUSION

The Court has determined that there was an objective appearance of impropriety due to the relationship between Judge Tolentino and Attorney General Moylan through Judge Tolentino's family members.[10] That relationship should have been disclosed once Attorney General Moylan was sworn into office. However, since Judge Tolentino is no longer part of this case, the Court finds that this does not serve as a basis to disqualify AAG Olan or the whole Office of the Attorney General. Additionally, the Court rejects the reconsidered arguments that AAG Olan should be disqualified under GRCP 4.2 and 8.4(d), or on the basis of an *appearance* of "vindictive personal bias." Defendant's Motion to Disqualify is therefore **DENIED**.

**SO ORDERED** this _____ day of April 2024.

**SERVICE VIA EMAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

AG, D. Lujan

Date: 4/5/24 Time: 4:43pm

Antonio G Cruz
Deputy Clerk, Superior Court of Guam

**HONORABLE JOSEPH N. CAMACHO**
Judge Pro Tempore, Superior Court of Guam

---

[10] **It is worth repeating, the undersigned judge extends the utmost respect to Judge Tolentino, his wife, and their children. Nothing in this Order is intended to imply or call into question the good reputation of Judge Tolentino, Mrs. Tolentino, or their children. The appearance of conflict of interest arises simply because of the close degree of familial relationship.**

CM0145-21
Decision and Order Denying Motion for Disqualification of Prosecutor
Page 15 of 15

# APPENDIX A

# Table of Consanguinity
Showing degrees of relationship

| | | | | Great-Great Grandparents (4) |
| --- | --- | --- | --- | --- |
| | | | Great Grandparents (3) | Great-Grand Uncles Aunts (5) |
| | | Grandparents (2) | Great Uncles Aunts (4) | First Cousins Twice Removed (6) |
| | Parents (1) | Uncles Aunts (3) | First Cousins Once Removed (5) | Second Cousins Once Removed (7) |
| Person | Brothers Sisters (2) | First Cousins (4) | Second Cousins (6) | Third Cousins (8) |
| Children (1) | Nephews Nieces (3) | First Cousins Once Removed (5) | Second Cousins Once Removed (7) | Third Cousins Once Removed (9) |
| Grand Children (2) | Grand Nephews Nieces (4) | First Cousins Twice Removed (6) | Second Cousins Twice Removed (8) | Third Cousins Twice Removed (10) |
| Great-Grand Children (3) | Great-Grand Nephews Nieces (5) | First Cousins Thrice Removed (7) | Second Cousins Thrice Removed (9) | Third Cousins Thrice Removed (11) |

Source:

http://upload.wikimedia.org/wikipedia/commons/2/28/Table_of_Consanguinity_showing_degrees_

of_relationship.png